```
                                U.S. DISTRICT COURT
                                DISTRICT OF VERMONT
                                      FILED
         UNITED STATES DISTRICT COURT
                 FOR THE                2022 MAY -5  PM 2: 29
           DISTRICT OF VERMONT
                                              CLERK
                                         BY_____
                                            DEPUTY CLERK
```

| | |
|---|---|
| SAIM SARWAR, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:21-cv-118 |
| PATEL INVESTMENTS INC., | ) |
| Defendant. | ) |

## DECISION ON MOTION TO DISMISS
## (Doc. 4)

Plaintiff Saim Sarwar has filed this lawsuit against Patel Investments, Inc. for alleged violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. Defendant owns and operates a motel in Bennington, Vermont called the Autumn Inn. The case concerns allegations that defendant violated the ADA by failing to provide information about accommodation measures for guests with disabilities on its pages in online reservations systems used by guests to search for and book hotel rooms.

Defendant has filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) on grounds of standing. (Doc. 4.) Following the decision of the Second Circuit in *Harty v. West Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022), the court scheduled an evidentiary hearing on the issue of standing only. The hearing took place on April 18, 2022. Mr. Sarwar was the only witness. Based on his testimony, the court makes the following findings of fact relevant to the standing issue.

### FINDINGS RELEVANT TO THE STANDING ISSUE

Plaintiff Saim Sarwar is an adult man who resides in Brooklyn, New York. He is disabled by cerebral palsy. He is confined to a wheelchair. He requires certain accommodations

in order to be safe and mobile. These include accessible parking and doorways, ramps, counters at a height appropriate for a seated person, bathroom accommodations and other similar measures.

Mr. Sarwar frequently files lawsuits against motels and other places of public accommodation. In recent years, he has filed approximately 300 such lawsuits, frequently in the Northeast. These lawsuits result from his search for violations of the ADA on online reservation systems. He seeks declaratory and injunctive relief as well as attorneys fees. This case is no exception. (*See* Am. Compl. at 9–10, Doc. 5-3.)

In March 2021, Mr. Sarwar planned an extensive trip as far north as Maine and south to Washington, D.C. One purpose of the trip was to see more of the United States. Another purpose was to visit the locations involved in his many lawsuits in order to demonstrate his desire to obtain lodging. Mr. Sarwar included Bennington, Vermont on his list of intended destinations. After satisfying himself that the online reservations pages for the Autumn Inn did not provide information about accommodations and accessibility for disabled guests, he filed this lawsuit on April 26, 2021. (Doc. 1.)

In late August 2021, Mr. Sarwar embarked on an ambitious trip through many states. He does not drive so his friend Daniel Pezza handled the driving. As Mr. Sarwar describes the trip, he and Mr. Pezza drove thousands of miles over an eight- or nine-day period. Mr. Sarwar did not keep notes or a log and his memory was faulty about specific stops. But in a general way, he described the following odyssey:

- **Day One** – Brooklyn, New York, north to Albany and Saratoga Springs, then south to Bennington by mid-afternoon, then east across Vermont to one of four possible cities in

2

New Hampshire (Keene, Concord, Manchester or Portsmouth). The pair spent the night in New Hampshire.

- **Day Two** – From New Hampshire west back to Bennington to view the Bennington Battle Monument, then northeast to Montpelier, then south to Marlboro, Massachusetts.
- **Day Three** – Visits to tourist sites in Connecticut with an overnight in Rhode Island.
- **Day Four** – Overnight in Newark, New Jersey.
- **Day Five** – West through Pennsylvania and then north to Binghamton, New York where they spent a stressful night at a Comfort Inn.
- **Day Six** – West to Buffalo, east to Syracuse, with an overnight in the greater New York City area.
- **Day Seven** – At home in Brooklyn, including a visit to the Bronx Zoo.
- **Day Eight** – Day trip to Long Island and return.

Mr. Sarwar's memory of the travel on any given day was hazy. Towards the end of the trip, he and Mr. Pezza also made a trip south to see Washington, D.C. and Maryland. He was not certain about where this trip fit into the itinerary. It is possible that the entire trip was a day or two longer than the eight days described above. It is possible that towards the end of this hectic week, Mr. Sarwar and Mr. Pezza drove south as far as Washington, D.C. and Maryland.

Mr. Sarwar described how he and Mr. Pezza would find places to stay while on the road. Towards the end of each day, Mr. Sarwar would use a hotspot in the vehicle to access the internet and look for suitable lodging. He would locate a suitable hotel nearby where the two men could spend the night.

After hearing from Mr. Sarwar, the court believes that he and Mr. Pezza took a road trip together for a week in late August and early September. Because the itinerary was determined

3

by the locations where Mr. Sarwar has pending lawsuits, the court believes that the trip involved significant mileage and visits to multiple states. The court attributes the confusion and uncertainty about Mr. Sarwar's precise itinerary to the lack of any written record or log and to Mr. Sarwar's increasing fatigue over the course of an extremely strenuous week of travel. In his testimony, Mr. Sarwar also described some limitations in his mental abilities due to his cerebral palsy.

For purposes of the standing issue, it is reasonably certain that Mr. Sarwar did *not* attempt to stay in Bennington, Vermont. He passed through Bennington during the afternoon on Day One, completing the day's travel somewhere in New Hampshire. He and Mr. Pezza found lodging that night in New Hampshire at what he described as a Hyatt property. He returned to Bennington the next day to view the Bennington Battle monument again, then turned northeast to visit Montpelier before stopping for the night outside of Boston in Marlborough, Massachusetts. Given the time required to drive from Bennington to Montpelier and then to eastern Massachusetts, his second visit to Bennington must have taken place in the morning. The remainder of the trip took Mr. Sarwar and Mr. Pezza far from Vermont.

Given Mr. Sarwar's practice of looking for lodging online at the end of the day, he would not have looked for a hotel in Bennington at the end of the day on Day One (when he was several hours away in southern New Hampshire) or on Day Two (when he was even further away in eastern Massachusetts).

## ANALYSIS

In recent years, a small group of ADA "testers" and their attorneys have developed expertise in filing multiple federal lawsuits against motels for violations they identify through internet searches. The defendants are frequently the operators of independent motels. At least in

4

this district, applications for default are common. Since it is implausible that any one of these plaintiffs actually plans to spend the night at the dozens of motels he or she has sued, the cases raise significant constitutional standing issues.

On March 18, 2022, the Second Circuit issued its opinion in *Harty v. West Point Realty*. Like Mr. Sarwar, the plaintiff in *Harty* is a disabled individual who filed a lawsuit alleging that the motel operated by the defendant violated regulations promulgated by the Department of Justice under the ADA. Mr. Harty sought declaratory and injunctive relief, attorneys fees, and damages pursuant to a provision of New York law not relevant here.

As the basis for his claim of ADA violation, Mr. Harty identified 28 C.F.R. § 36.302(e)(1)(ii), which requires places of public accommodation to identify accessible features in hotel online listings. *Id.* at 439. This is the same provision relied upon by Mr. Sarwar.

The Second Circuit affirmed the dismissal of Mr. Harty's complaint on standing grounds. "Because Harty asserted no plans to visit West Point or the surrounding area, he cannot allege that his ability to travel was hampered by West Point Realty's website in a way that caused him concrete harm." *Id.* at 443. His plans to visit the area "some day" were insufficient to support a claim of actual or imminent injury for purposes of the injunctive and declaratory claims. *Id.*

The issue in this case is whether Mr. Sarwar's pilgrimage to the sites of the motels he has sued distinguishes his case sufficiently from *Harty* to satisfy the standing requirement. The court starts with the general requirements for standing and then considers the import of his decision to spend the night in New Hampshire and Massachusetts—many hours away from the location of the Autumn Inn.

I.      **Standing Requirements**

Since Mr. Sarwar is the party invoking the court's jurisdiction, and since the court held an evidentiary hearing on the issue of standing, Mr. Sarwar has the burden of proof on the issue of standing. *Leighton Techs. LLC v. Oberthur Card Sys., S.A.*, No. 04 Civ. 2496(CM), 2007 WL 2230157, at *5 (S.D.N.Y. July 11, 2007).

The leading Supreme Court case on standing remains *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), in which Justice Scalia identified the three essential criteria for standing: injury in fact defined as an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent; a causal connection between the injury and the conduct complained of; and a likelihood that the injury will be redressed by a favorable decision. *Id.* at 560. These elements received renewed endorsement from the Court in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), which identified injury in fact as "the first and foremost of standing's three elements." *Id.* at 339 (cleaned up).

*Spokeo* defined the requirement of a concrete injury as a harm that actually exists—now or as a risk of future harm. It need not be tangible. But it must be real and not abstract. In *Spokeo*, the Court rejected a claim that mistakes in a profile maintained by a credit agency conferred standing in the absence of evidence of actual harm to the consumer.

The Court returned to the task of defining concrete injury in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Once again, a credit agency was the defendant. In contrast to the plaintiff in *Spokeo*—who was falsely described as nothing worse than "married, has children, is in his 50's, has a job, is relatively affluent, and holds a graduate degree," *Spokeo*, 578 U.S. at 336—the plaintiffs in TransUnion were falsely described as individuals on a Treasury Department list of terrorists, drug traffickers, or other serious criminals. The Court distinguished

between plaintiffs whose information was shared with third parties—standing clearly present for a reputational injury—and those whose information was not. The second group lacked standing because they had not been injured and there was insufficient proof of future harm.

## II. Application

This discussion returns us to the question of concrete harm in Mr. Sarwar's case. Had he done nothing more than allege an intent to visit Vermont "some day," his claim as a "tester" would clearly fail the concrete injury test. *Harty*, 28 F.4th at 443. But Mr. Sarwar not only made a plan to visit the state, he and his friend passed through Bennington twice. Had he wished, he could have sought to stay at the defendant's motel. He did not—for one of two possible reasons. As he explains it, he had already ruled out the motel (and filed suit) because of the absence of information on the website. Or, as Defendant argues, he passed through Bennington twice on his way to other cities and never demonstrated any intent to seek lodging in Bennington, only passing through on his way to spend the night in other cities.

The court concludes that Mr. Sarwar has not met his burden to prove that the alleged violation caused any concrete injury. The evidence indicates that, despite passing through Bennington, he had no interest in staying overnight in the area. The reason he did not stay there was because he stayed in other states (New Hampshire and Massachusetts) on the two nights when a stay in Bennington was possible.

In contrast to the plaintiff in *Harty*, who planned in a general way to visit West Point some day, we know in Mr. Sarwar's case with certainty that he did not elect to spend the night in Bennington. But the result in this case is the same as the result in *Harty* because Mr. Sarwar lacks standing. His evidence is that he chose to stay many miles from Bennington in two different states. He presented no evidence of any plan that called for an overnight stay in the

7

Bennington area. Under these circumstances, any deficiency in the Autumn Inn online reservation listing caused him no concrete harm.

## **Conclusion**

For these reasons, the court GRANTS the motion to dismiss (Doc. 4) on standing grounds. This dismissal is without prejudice. *Harty*, 28 F.4th at 445.

Dated at Rutland, in the District of Vermont, this 5th day of May, 2022.

Geoffrey W. Crawford, Chief Judge
United States District Court